IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                    |   |                                    |
|------------------------------------|---|------------------------------------|
| VANESSA DONNETTA TONGUE            | : |                                    |
|                                    | : |                                    |
| v.                                 | : | Civil Action No. DKC 2005-1782     |
|                                    | : |                                    |
| KENNETH C. SCOTT, SR., et al.      | : |                                    |
|                                    | : |                                    |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are the motion of Defendants to dismiss (paper 35) and the motion for sanctions filed by Kevin Karpinski (paper 22).[1]  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to dismiss will be granted in part.  The motion for sanctions will be denied.

## I.  Background

On June 30, 2005, Plaintiff Vanessa Donnetta Tongue, proceeding *pro se*, filed a complaint naming 19 defendants: Kenneth Scott, Sr.; James Jenkins; James F. Artis, Sr.; Darrel Piper; Robert V. Middleton; Andre Irving, Sr.; John Allen; the Town of Capitol Heights; Evelyn D. Grimes; Darrel A. Miller; Joyce A. Nixon; Ronald L. Williams; Bette J. Carroll; Senora C. Ball; Amizi

---

[1] Mr. Karpinski formerly was a defendant in this case. Following the filing of a motion to dismiss by Mr. Karpinski (paper 14), Plaintiff agreed to his dismissal from the case.  The court granted Mr. Karpinski's motion to dismiss on October 18, 2005. (Paper 27).

L. Springs; Daithi Htun; Beverly Habada; Michael Ron Worthy, Esq.; and Kevin Karpinski, P.A.   Two Defendants, Mr. Worthy and Mr. Karpinski, filed motions to dismiss and, without opposition from Plaintiff, the motions were granted.   (Paper 27).   On October 7, 2005, Mr. Karpinski also filed a motion for sanctions (paper 22), currently pending.   Fifteen of the other Defendants filed a motion for a more definite statement (paper 17), to which Plaintiff did not timely respond.[2]   On November 28, 2005, the court issued an Order stating that Plaintiff had not responded to the motion for a more definite statement or filed an amended complaint, nor had she responded to the motion for sanctions.   The court directed Plaintiff to show cause why the case should not be dismissed.   The court indicated that a failure to respond by December 12, 2005, would result in dismissal and the court would consider the motion for sanctions to be unopposed.   (Paper 33).

On November 29, 2005, Plaintiff, represented by counsel, filed an amended complaint.[3]   (Paper 34).   Plaintiff is not clear as to

---

[2] Two of the named Defendants, Daithi Htun and Beverly Habada, do not appear to have been served.

[3] On December 12, 2005, Plaintiff filed a separate "Answer to Show Cause."   (Paper 37).   Plaintiff's counsel stated that upon taking over the case, he met with counsel for Defendants and indicated to defense counsel that he would have an amended complaint by November 17, 2005.   However when that date came, he had not formulated the amended complaint and was engaged in another matter that "usurped" his time.   Rather than file a motion for more time to file an amended complaint, Plaintiff's counsel elected to file an enlargement motion at the time he filed the amended
(continued...)

whom she names as Defendants in the amended complaint. In the caption to the amended complaint, Plaintiff names "Kenneth Scott, Sr., et al." In the "Parties" section of the amended complaint, Plaintiff includes paragraphs describing only herself and Mr. Kenneth C. Scott, the acting Chief of Police for the Town of Capitol Heights, whom she sues only in an official capacity. Plaintiff deletes all paragraphs individually describing the other parties named as defendants in her original complaint. Plaintiff states: "The *remaining named defendants* are to [sic] Ms. Tongue's claim that Capit[o]l Heights retaliated against her for make public [sic] Capit[o]l Height's violation of non-certified personnel – the Whistle Blower claim." (Paper 34, at 3) (emphasis added). Notwithstanding this reference to the "remaining named defendants," Plaintiff seeks relief only from the Town of Capitol Heights. Nevertheless, all 15 of the remaining Defendants who were named in and served with the original complaint filed a motion to dismiss the amended complaint for failure to state a claim (paper 35) and an answer (paper 36).

---

[3](...continued)
complaint. Notwithstanding the delay, counsel now had a "strong grasp of the facts of the case" and "justice would not be served" if the case were dismissed. With regard to the motion for sanctions, Plaintiff states that the court did not order her to respond to the motion for sanctions and that Local Rule 105.8(b) states that a party need not answer a motion for Rule 11 sanctions unless ordered to do so by the Court. She also states that "sanctions against [her] were not appropriate given the underlying facts of the case."

In the amended complaint, Plaintiff alleges the following facts.  In July 1999, Plaintiff began working as a police officer for the Town of Capitol Heights ("Capitol Heights").  Plaintiff states:

> From the beginning of her employment, Plaintiff was sexually harassed by the former police chief, William Harrison, and other police department personnel.  Since Tongue's rebuff of the former Chief in 1999, she has been retaliated against by the former Chief, his successors and friends.  They have subjected Tongue to a hostile work environment resulting from former [sic] Chief apparent attempt to drive her voluntarily from her job.

(Paper 34, at 3).  Plaintiff asserts that during the "campaign to drive her from the job," Defendants retaliated against her because she reported violations of police department policies regarding Capitol Heights police officer certifications.

Plaintiff explains that the "primary method of retaliation" was to challenge her suitability as a police officer.  Plaintiff states that Capitol Heights created a "Psychological Fitness for Duty" report that stated that Plaintiff was not fit for duty as a new hire.  Based on this report, Capitol Heights found that Plaintiff was a liability and terminated her in November 2005 without a proper hearing, "as part of its ongoing effort to retaliate against her for bringing this suit."

Although it is not entirely clear, based on Plaintiff's "Statement of Claims," Plaintiff appears to assert the following: (a) gender discrimination in violation of Title VII of the Civil

4

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") based on hostile work environment sexual harassment;[4] (b) retaliation in violation of Title VII; (c) violation of Maryland's whistleblower statute, Md. Code. Ann. State Pers. & Pens. §§ 5-305, *et seq.;* and (d) wrongful discharge under state common law. Plaintiff seeks compensatory damages, backpay and other benefits from the date of termination, injunctive relief, costs and attorneys' fees, relief under the whistleblower statute, §§ 5-305, *et seq.*, and other relief that the "interests of justice may require." On December 12, 2005, Defendants filed a motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). (Paper 35). After filing a memorandum in opposition to the motion to dismiss, Plaintiff's attorney filed a motion to withdraw from the case. On July 27, 2006, Magistrate Judge William Connelly granted his motion; Plaintiff now proceeds *pro se*.

## II. Standard of Review

A Rule 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in

---

[4] With regard to her Title VII claim, Plaintiff asserts that she has exhausted her administrative remedies. It appears from the amended complaint that Plaintiff filed two administrative claims. Plaintiff states that she received a "final decision on her Right to Sue Letter (Charge No. 120-200400234C)" on March 30, 2005. Plaintiff additionally asserts that "[s]he has received a final decision on her EEO complaint (Agency No. 04-68925-0003) on December 22, 2004." (Paper 34, at 2). Plaintiff does not provide any portion of the administrative record and the substance of these administrative complaints is unknown.

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.  Analysis

## 1.  Title VII

## (a) Hostile Work Environment

Plaintiff alleges that, "from the beginning of her employment," she was sexually harassed by the former police chief

and other police department personnel.  Plaintiff asserts that she
was subjected to a hostile work environment resulting from "former
Chief [sic] apparent attempt to drive her voluntarily from her
job."  Plaintiff also states that Capitol Heights violated Title
VII by its failure to cure the hostile work environment endured by
Plaintiff.  Defendants contend that Plaintiff fails to allege facts
sufficient to show that the alleged sexual harassment was severe or
pervasive enough to alter the conditions of her employment or that
there is a basis for imposing liability on Capitol Heights.

> To state a hostile work environment claim,
> [the plaintiff] must allege that: (1) she
> experienced unwelcome harassment; (2) the
> harassment was based on her gender, race, or
> age; (3) the harassment was sufficiently
> severe or pervasive to alter the conditions of
> employment and create an abusive atmosphere;
> and (4) there is some basis for imposing
> liability on the employer.

*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.),
*cert. denied*, 540 U.S. 940 (2003).  Although Plaintiff need not
forecast evidence to prove her claim, she must "allege facts
sufficient to state all the elements of her claim."  *Id.*

Plaintiff fails to allege facts sufficient to show that the
alleged harassment was sufficiently severe or pervasive so as to
alter the terms and conditions of her employment or create an
abusive atmosphere.  Although Plaintiff alleges that she was
subjected to a hostile work environment by her former supervisor
and "other police department personnel," she fails to describe any

7

incident of alleged harassment or otherwise provide any facts showing how the environment was hostile (e.g., by providing a description of the nature or frequency of the alleged harassment). Plaintiff's conclusory assertion regarding the nature of the environment is insufficient to withstand a motion to dismiss.

Moreover, without additional detail as to the alleged incidents of harassment, it is difficult to determine if Plaintiff can satisfy the fourth element of a hostile environment claim by providing a basis for imputing liability to Capitol Heights. To the extent that Plaintiff's supervisor was responsible for the hostile work environment, her employer may be held vicariously liable. *See e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756-66 (1998) (discussing the circumstances in which an employer is subject to vicarious liability for a hostile work environment created by a plaintiff's supervisor). However, to the extent that the hostile environment claim against Capitol Heights is based on the actions of other personnel who had no authority over Plaintiff, she must show that Capitol Heights acted negligently in order to establish liability. *Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir. 1999) (noting that "employers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop" harassment "by a fellow-employee having no authority of any kind over the victim").

Accordingly, Defendants' motion to dismiss the hostile work environment claim will be granted, although Plaintiff will be given leave to amend.  If Plaintiff chooses to amend her claim, she must allege specific facts sufficient to state all elements of her claim and must specifically identify the persons who she claims are responsible.  Plaintiff stated in her opposition memorandum that although she does have additional details regarding the alleged harassment, she does not wish to make them a part of the public record.  (Paper 38, at 2).  To the extent that Plaintiff does not wish to make public any details surrounding the alleged sexual harassment, Plaintiff should file the amended complaint under seal, along with a proper motion to seal that complies with Local Rule 105.11.

**(b) Retaliation**

Plaintiff states in her amended complaint that Capitol Heights terminated her in November 2005 "without a proper hearing as part of its ongoing effort to retaliate against her for bringing this suit." (Paper 34, at 4).  Defendants do not construe Plaintiff's amended complaint as stating a separate claim of retaliation and therefore do not address the claim in their motion to dismiss.

To state a claim of retaliation, Plaintiff must allege that: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection

between the protected activity and the adverse action.  *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

With regard to the second element, the Supreme Court recently clarified what type of adverse action is sufficient to state a retaliation claim.  In *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006), the Court stated: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks omitted).

With respect to the third element, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).  Thus, the employer must know about the protected activity.  *Id.*  Courts also look to the length of time between the employer's awareness of the protected activity and the alleged adverse employment action.  *See, e.g., Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (stating that a thirteen-month lapse negated any inference of a causal connection); *Dowe*, 145 F.3d at 657 (finding no retaliation where there was a three-year time lapse).

Plaintiff filed a complaint in this court alleging, among other things, that she was sexually harassed in violation of Title

VII, which would be sufficient to establish that Plaintiff engaged in a protected activity, the first element of a retaliation claim. Plaintiff alleges that an adverse action was taken against her – she was fired from her job in November 2005 – thereby satisfying the second element.   With regard to the third element, Plaintiff states that her termination occurred as part of an ongoing effort to retaliate against her for bringing this suit.   The suit was filed in June 2005; Plaintiff was terminated a short time later in November 2005.  Given that the protected activity was the filing of a law suit against Capitol Heights and its chief of police, among others, notice to those Defendants is assumed.  Thus, the complaint can be construed to state a retaliation claim arising from her termination, and Defendants' motion to dismiss the retaliation claim will be denied.

## 2.  Whistleblower Claim

Plaintiff asserts that one or more of Defendants violated Md. Code. Ann. State Pers. & Pens. §§ 5-305, *et seq.,* by retaliating against her after she reported violations of police department policies regarding Capitol Heights police officer certifications. Defendants maintain that the whistleblower statute cited by Plaintiff provides protections to state executive branch employees and that Plaintiff was a municipal employee.   Defendants additionally argue that the whistleblower statute at issue does not create a private cause of action cognizable in court; instead, it

allows alleged victims to pursue their claims through an administrative process.[5]

The relevant provision, § 5-305, which is part of the Maryland Whistleblower Law in the Executive Branch of State Government, states:

> Subject to the limitations of § 5-306 of this subtitle, a supervisor, appointing authority, or the head of a principal unit may not take or refuse to take any personnel action as a reprisal against an employee who:
>
> (1) discloses information that the employee reasonably believes evidences:
>
>> (i) an abuse of authority, gross mismanagement, or gross waste of money;
>>
>> (ii) a substantial and specific danger to public health or safety; or
>>
>> (iii) a violation of law; or
>
> (2) following a disclosure under item (1) of this section seeks a remedy provided under this subtitle or any other law or policy governing the employee's unit.

Pursuant to § 5-301, the law applies "to all employees and State employees who are applicants for positions in the Executive Branch of State government, including a unit with an independent personnel system." *See also* John A. Gray, *The Scope of Whistleblower Protection in the State of Maryland: A Comprehensive Statute is Needed*, 33 U.Balt.L.Rev. 225, 229 (2004) (noting that § 5-305

---

[5] In her opposition memorandum, Plaintiff fails to respond to either of Defendants' arguments against the applicability of the whistleblower statute.

"provides a remedy to any employee of the executive branch"). Sections 5-307, 5-308, 5-309, and 5-310 provide procedures for filing an administrative claim.  Generally, an executive employee who is retaliated against adversely may file a complaint with the Secretary of Budget and Management.  If the Secretary determines that a violation has occurred, the Secretary may take certain enumerated actions. § 5-309.  A complainant may appeal to the Office of Administrative Hearings, whose decision may be subject to judicial review pursuant to § 5-310.

Plaintiff has not alleged that she was an employee in the executive branch of the state of Maryland, and therefore, the protections of § 5-305 are not applicable to her.  Moreover, even assuming the statutory provision was applicable, Plaintiff does not assert that she has exhausted her administrative remedies. Accordingly, Defendants' motion to dismiss the whistleblower claim will be granted.  Because Plaintiff indicated that the whistleblower claim was the sole claim asserted against defendants other than Capitol Heights and Chief Scott, the amended complaint will be dismissed in its entirety as to these other defendants. (Paper 34, at 3) (describing Mr. Scott, the acting chief of police for Capitol Heights, and stating, "The *remaining named defendants* are to [sic] Ms. Tongue's claim that Capit[o]l Heights retaliated against her for make public [sic] Capit[o]l Height's violation of non-certified personnel – the Whistle Blower claim").

13

**3.  Wrongful Discharge**

It is not entirely clear from the amended complaint whether Plaintiff states a separate claim of wrongful discharge, or if she alleges only that she was discharged (1) in violation of Title VII when she rebuffed sexual advances by the former police chief or other police personnel, (2) in retaliation for her alleged whistleblowing activities, and/or (3) in retaliation for filing this action.  Defendants construe the amended complaint as stating a separate claim of wrongful discharge and argue that the claim should be dismissed because Plaintiff failed to provide the appropriate notice in compliance with the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304.  In her opposition memorandum, Plaintiff maintains that her November 2005 termination was "the final retaliatory act against her after her rebuff of the former police chief's sexual advances in November 1999," and that she complained of retaliation to the EEOC in 2003. (Paper 38, at 2-3).  Plaintiff states:

> The wrongful termination claim is grounded in the same facts and circumstances that are part of her Title VII retaliation claim.  The Defendants have therefore had notice for over a year of the activities giving rise to the wrongful termination claim.  Moreover litigation of the pendent wrongful termination claim with the Title VII claim will improve judicial efficiency and save expense to the parties.

*Id*. at 3.

14

Section 5-304(a) states in relevant part: "[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." A plaintiff's injury occurs, "pursuant to § 5-304, when his causes of action arose, i.e. when the legally operative facts permitting the filing of his claims came into existence." *Heron v. Strader*, 361 Md. 258, 264 (2000). The requisite notice "shall be in writing, and shall state the time, place, and cause of the injury," § 5-304(b)(3), and it must be directed to the proper official. Moreover, "'[t]he notice is a condition precedent to the right to maintain the suit, and compliance with the notice statute should be alleged in the declaration as a substantive element of the cause of action.'" *Hargrove v. Mayor & City Council*, 146 Md.App. 457, 462-63 (2002) (quoting *Madore v. Balt. County*, 34 Md.App. 340, 345 (1976)); *see also Renn v. Board of Comm'rs*, 352 F.Supp.2d 599, 602 (D.Md. 2005).

Assuming Plaintiff intended to assert a separate wrongful discharge claim in the amended complaint, Plaintiff does not properly allege notice in the amended complaint. Accordingly, Defendants' motion to dismiss Plaintiff's wrongful discharge claim will be granted. Although it is not entirely clear whether Plaintiff can amend to allege this necessary element, she will be given leave to do so.

## III.  Motion for Sanctions

Mr. Karpinski asserts that, pursuant to Fed.R.Civ.P. 11, he is entitled to sanctions in the form of in attorneys' fees and costs expended while defending Plaintiff's lawsuit, which he claims was without legal or factual basis.  Mr. Karpinski states that on August 29, 2005, prior to preparing his motion to dismiss, he sent a letter to Plaintiff explaining to her that she had no basis for her suit and asking her to withdraw her claim against him.  On September 6, 2005, Plaintiff telephoned Mr. Karpinski's attorney and told her that Plaintiff had been told by an attorney who did not represent her to "sue everyone" in order "to preserve her EEOC rights."  Although counsel for Mr. Karpinski indicated to Plaintiff that she had been given improper advice and that she did not need to sue Mr. Karpinski to preserve any rights, Plaintiff responded that she had an appointment to meet with another lawyer on September 18, 2005, and that she would not withdraw her claim against Mr. Karpinski until she met with and hired a lawyer to represent her.  On September 12, 2005, Mr. Karpinski filed a motion to dismiss the claims against him and on October 7, 2005, he filed a motion for sanctions seeking $484.00 in attorneys' fees and costs.  He asserts in the motion for sanctions that, pursuant to Rule 11, Plaintiff was served 21 days prior to the date the motion was filed with the court.

On October 17, 2005, Plaintiff filed a response to the motion to dismiss, consenting to the dismissal.[6]   As noted, Plaintiff initially failed to respond to Mr. Karpinski's motion for sanctions and the court addressed this failure in its November 28, 2005, show cause Order, and directed Plaintiff that if she did not respond the court would construe the motion as being unopposed.   In her response to the show cause Order, Plaintiff first stated that she did not initially respond to the motion for sanctions because the court did not order her to do so and that Local Rule 105 8(b) states that a party need not answer a motion for Rule 11 sanctions unless ordered to do so by the Court.   She also stated that "sanctions against Ms. Tongue were not appropriate given the underlying facts of the case."

Fed.R.Civ.P. 11 states, in relevant part:

> (b)  Representations  to  the  Court.   By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,  -
> > (1) it is not being presented for any improper purpose, such as to harass or to cause  unnecessary  delay  or  needless increase in the cost of litigation;

---

[6] Plaintiff's response to the motion to dismiss (paper 24), states that she filed the matter *pro se* believing that Mr. Karpinski and Mr. Worth had violated various statutes.  However, after Plaintiff's counsel reviewed the claims, "Plaintiff has determined that these two defendants acted solely as [attorneys] representing their clients within the bounds of the law."  *Id*. Accordingly, Plaintiff requested that the court dismiss Mr. Worthy and Mr. Karpinski from the action.

(2) the claims, defenses, and other legal
contentions therein are warranted by
existing law or by a nonfrivolous
argument for the extension, modification,
or reversal of existing law or the
establishment of new law;

(3) the allegations and other factual
contentions have evidentiary support or,
if specifically so identified, are likely
to have evidentiary support after a
reasonable opportunity for further
investigation or discovery; and

(4) the denials of factual contentions
are warranted on the evidence or, if
specifically so identified, are
reasonably based on a lack of information
or belief.

(c) If, after notice and a reasonable
opportunity to respond, the court determines
that subdivision (b) has been violated, the
court may impose an appropriate sanction upon
the attorneys, law firms, or parties that have
violated subdivision (b) or are responsible
for the violation.

Rule 11 provides that motions for sanctions "shall be made

separately from other motions or requests and shall describe the

specific conduct alleged to violate subdivision (b)."  Moreover,

Rule 11's safe harbor provision states that the motion for

sanctions will be served on the opposing party but "shall not be

filed with or presented to the court unless, within 21 days after

service of the motion . . ., the challenged paper, claim, defense,

contention, allegation, or denial is not withdrawn or appropriately

corrected."

Although Defendant complied with the procedural aspects of Rule 11 by filing a separate motion and serving the motion on Plaintiff at least 21 days prior to filing it with this court, sanctions are not warranted.  Plaintiff initially filed her complaint *pro se*, and there are no facts suggesting that she pursued a claim against Mr. Karpinski for any improper motive or reason.  It appears that Plaintiff received flawed advice from an attorney and, based on this advice, believed that she was required to assert claims against "everyone" in order to preserve her Title VII rights.  Given the complexities surrounding the pursuit of a Title VII claim, Plaintiff's initial confusion about the proper parties to sue is not unreasonable.  Moreover, Plaintiff responded to Mr. Karpinski's initial letter, indicating her concerns and stating that she would not dismiss her claim until she was represented by counsel.  After she obtained representation, she did not oppose Mr. Karpinski's motion to dismiss and instead asked the court to dismiss him from the case.  Accordingly, Mr. Karpinski's motion for sanctions will be denied.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted with regard to her whistleblower, Title VII hostile work environment, and wrongful discharge claims.  Plaintiff will be given leave to amend her complaint with regard to the wrongful discharge and hostile work environment claims.  In addition, the

complaint will be dismissed in its entirety as to Defendants other than Capitol Heights and Chief Scott.    A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge